UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re

ALIANZA TRINITY DEVELOPMENT       Case No.: 16-24483-BKC-AJC
GROUP, LLC,       Chapter 11 Proceeding

      Debtor.

_____/

## SUPPLEMENT TO:

**DEBTOR'S EMERGENCY MOTION PURSUANT TO U.S.C. § 364
AND BANKRUPTCY RULE 4001 FOR ENTRY OF INTERIM AND
FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN
POST-PETITION FINANCING SECURED BY A PRIMING LIEN
AND A SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIM**

Alianza Trinity Development  Group, LLC (the "Debtor") files this Supplement to

Debtor's Emergency Motion Pursuant to 11 U.S.C. §364 and Bankruptcy Rule 4001 for Entry of

Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing Secured by a

Priming Lien and a Super-Priority Administrative Expense Claim ("Motion") in order to attach

hereto the Proposed Order on the Motion.

Respectfully submitted,

**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
*Proposed Attorneys for Debtor*
Miami Center, 22nd Floor
201 S. Biscayne Boulevard
Miami, Florida  33131
Telephone: 305.403.8788
Facsimile:  305.403.8789

By:  /s/ Thomas R. Lehman
    THOMAS R. LEHMAN, P.A.
    FL Bar No. 351318
    E-mail: trl@lklsg.com
    ROBIN J. RUBENS, ESQ.
    FL Bar No. 959413
    E-mail: rjr@lklsg.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Supplement and attachment thereto were served on November 29, 2016 via the Court's CM/ECF filing system to all recipients registered to receive notices of electronic filings generated by CM/ECF for this case and that a supplemental certificate of service will be filed evidencing service of the foregoing Supplement and attachment on November 30, 2016 via U.S. Mail to the addressees listed thereon.

By:  /s/ Thomas R. Lehman
        Thomas R. Lehman

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>ALIANZA TRINITY DEVELOPMENT GROUP LLC<br><br><div align="center">Debtor</div> | Chapter 11<br><br>Case No. 16-24483-AJC<br><br>(Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED, SUPERPRIORITY BASIS, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtor for interim and final orders, under

sections 105, 361, 362, 363, and 364, of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002 and 4001 of Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "Local Bankruptcy Rules") seeking, among other things:

(1) authority pursuant to Bankruptcy Code sections 363 and 364(c) and (d) to obtain debtor-in-possession secured financing (the "DIP Facility") pursuant to the following terms and agreements (collectively, the "DIP Financing Documents"): (a) this Order, and any final order entered by this Court approving the Motion and DIP Facility (the "Final Order"), and (b) the Alianza Trinity Development Company, LLC Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility Term Sheet, attached to the Motion as **Exhibit 2**, as amended, modified, and/or supplemented at or before the Final Hearing (as such term is defined below) and presented to this Court (the "DIP Financing Term Sheet"),[1] with Lantern Business Credit, LLC (the "DIP Lender");

(2) the grant to the DIP Lender, a superpriority administrative claim status pursuant to Bankruptcy Code sections 364(c)(1) and 507(b) in accordance with the terms of this Order;

(3) a grant of adequate protection to the Pre-Petition Lender under and in connection with the Pre-Petition Loan Agreement and Pre-Petition Loan Documents (as defined below) in accordance with the terms set forth herein;

(4) modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

(5) a Final Hearing on the Motion for entry of an order authorizing the DIP Facility on a final basis.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Financing Term Sheet or the Motion, as applicable.

Pursuant to Bankruptcy Rule 4001, this Court held an interim hearing with respect to the Motion on November 30, 2016 (the "Interim Hearing").

After the Motion and the proceedings before this Court at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court as reflected on the record established by the Debtor at the Interim Hearing;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.      Petition Date.  On October 27, 2016 (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;[3]

B.      Debtor in Possession.  The Debtor continues to operate its business and manage its property as Debtor and Debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108, and no trustee or examiner has been appointed;

C.      Notice.  The Debtor gave due and sufficient notice of the Motion pursuant to the Bankruptcy Rules and Local Bankruptcy Rules;

D.      Jurisdiction and Venue.  This Court has core jurisdiction over the Debtor's bankruptcy cases, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

E.      Statutory Committee Formation.  As of the date hereof, the United States Trustee has not appointed an official committee of unsecured creditors in this matter pursuant to Bankruptcy Code section 1102 (a "Statutory Committee");

---

[2]    To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

[3]    Unless otherwise noted, all statutory references are to the Bankruptcy Code.

F.     <u>Debtor's Stipulations</u>.    The Debtor has admitted, represented and stipulated, without prejudice to the rights of third parties or any Statutory Committee set forth in this Order, the following (collectively, the "<u>Stipulations</u>"):

(1)     *Pre-Petition Loan Documents and Obligations*.  As of the Petition Date, Debtor and Bright's Creek Golf Club, LLC ("<u>Bright's Creek</u>") and Lantern Business Credit, LLC ("<u>Pre-Petition Lender</u>") were parties to that certain Loan Agreement dated as of July 10, 2015 (such agreement, as amended, the "<u>Pre-Petition Loan Agreement</u>", and together with all other documents, instruments, and agreements delivered in connection with the Pre-Petition Loan Agreement, the "<u>Pre-Petition Loan Documents</u>"), pursuant to which (a) the Debtor was indebted to the Pre-Petition Lender (i), without defense, counterclaim, recoupment, or offset of any kind, in the approximate non-contingent liquidated amount of no less than $12,255,181.16 as of October 27, 2016 with respect to principal, accrued interest (including interest accrued at the default rate) and Pre-Petition Lender's fees and expenses, including reasonable attorney's fees and expenses and (ii) an amount equal to the "Prepayment Fee" (as defined in the Pre-Petition Loan Agreement) and interest accrued with respect thereto (hereinafter the "<u>Disputed Fee</u>"), the amount of such Disputed Fee being subject to a dispute among the Debtor and Pre-Petition Lender (collectively, the "<u>Pre-Petition Obligations</u>") and (b) except for the Debtor's reservation of rights with respect to the Disputed Fee such Pre-Petition Obligations were secured by valid, enforceable, properly perfected, first priority, and unavoidable liens on and security interests (the "<u>Pre-Petition Liens</u>") encumbering substantially all assets of the Debtor (such collateral, the "<u>Pre-Petition Collateral</u>"), as set forth in the Pre-Petition Loan Agreement and Pre-Petition Loan Documents;

(2)     *DIP Lender's Terms of Financing*.  The DIP Lender is willing to provide postpetition financing to the Debtor through the DIP Facility as set forth in the DIP Financing Term Sheet;

(3)     *Reserved*.

(4)     *No Claims Against Pre-Petition Lenders*.  The Debtor possesses no claims, offsets, or other rights, or causes of action against the Pre-Petition Lender that would in any manner impair, reduce, or otherwise modify the Pre-Petition Obligations (other than with respect to the amount of the Disputed Fee) or the validly perfected Pre-Petition Liens upon the Pre-Petition Collateral;

(5)     *Validity and Non-Disturbance of Pre-Petition Obligations*.  The Pre-Petition Obligations constitute valid, binding obligations of the Debtor, enforceable in accordance with their terms, and the Debtor will not assert any claims, counterclaims, setoffs, or defenses of any kind or nature, which in any way would affect the validity or enforceability of any of the Pre-Petition Obligations and/or the Pre-Petition Liens of the Pre-Petition Lender upon the Pre-Petition Collateral, or which would in any way reduce the obligation of the Debtor to pay in full all of the Pre-Petition Obligations (other than with respect to the amount of the Disputed Fee);

(6)     *Costs of Estate Administration*.  The Debtor reasonably and in good faith believes that the use of the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Credit Facility are sufficient to fund all projected legitimate and allowable expenses of their Chapter 11 Case from the Petition Date through the period to which the Budget pertains.  Funding would be advanced to the Debtor's affiliate, Bright's Creek Golf Club, LLC ("BC" or Bright's Creek") which is currently in

5

possession of a federal court appointed receiver, Marc Rudow (the "Receiver").  Funding would be advanced to the Debtor's DIP bank account and then remitted to the BC Receiver to pay expenses under the Budget.

(7)    *Authorization.*  Debtor is a duly organized, validly existing limited liability company and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral.  The Debtor has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the DIP Financing Term Sheet and this Order and to incur the obligations provided for thereon.  Except as may be explicitly required in the DIP Financing Term Sheet, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other person (other than the DIP Lender), which has not already been obtained or done, is required in connection with the execution, delivery, and performance by the Debtor of any of the documents required as a condition to the validity or enforceability of the DIP Financing Term Sheet, other than entry by this Court of this Order.

G.    Inability to Obtain Unsecured Credit.  The Debtor is unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct its business which is managed by the Debtor's affiliate BC;

H.    Inability to Obtain Alternate Secured Credit.  The Debtor is unable to obtain secured credit on more favorable terms than under the terms and conditions provided in this Order and  other DIP Financing Documents;

I.    Reserved.;

J.      <u>Best Interests of Estates</u>.  It is in the best interest of Debtor's estate that the Debtor be allowed to enter into the DIP Facility in order to obtain postpetition secured financing from the DIP Lender, and use the Pre-Petition Collateral subject to and in accordance with the terms of this Order and the DIP Financing Term Sheet, and to grant adequate protection to the Pre-Petition Lender on account of the Pre-Petition Obligations, on an interim basis under the terms and conditions set forth herein and in the DIP Financing Term Sheet, as such is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing;

K.      <u>Good Faith</u>.  The extension of credit and financial accommodations under the DIP Financing Term Sheet are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e);

L.      <u>Immediate Need for DIP Facility</u>.  The Debtor require access to the funding available under the DIP Facility and the DIP Financing Term Sheet in order to satisfy administrative expenses associated with the operation of its business as a going concern and other costs relating to the administration of the Chapter 11 Case, and in order to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing.  Specifically, the Debtor needs the funding to pay payroll, insurance, and other expenses to manage and operate the Property;

M.      <u>Necessity of DIP Facility Terms</u>.  The Pre-Petition Lender is unwilling to consent to use of the Pre-Petition Collateral by the Debtor, except as provided under the terms of the DIP Financing Term Sheet and this Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Order will not be affected by any subsequent

7

reversal or modification of this Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the postpetition financing arrangement contemplated in the DIP Financing Term Sheet; and

N. <u>Good Cause for Entry to Avoid Immediate and Irreparable Harm</u>. Good and sufficient cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Order, the Debtor and their estates will be immediately and irreparably harmed. Entry of this Order, consummation of the financing under the DIP Facility and the use of Pre-Petition Collateral, in accordance with this Order and the DIP Financing Term Sheet are in the best interests of the Debtor, its estate and creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

1. <u>DIP Facility Approval</u>. The Motion is granted on an interim basis effective as of the Petition Date. The Debtor is authorized, pursuant to Bankruptcy Code sections 363 and 364, to enter into the DIP Facility pursuant to the DIP Financing Term Sheet, to execute such other and additional documents necessary or desired to implement the DIP Facility or the DIP Financing Term Sheet, to obtain postpetition secured financing from the DIP Lender, and to use the Pre-Petition Collateral, pursuant to the terms and conditions of the DIP Financing Term Sheet and this Order (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the DIP Financing Term Sheet in accordance with this Order) to avoid immediate and irreparable harm to the Debtor's estate ending the Final Hearing. The Debtor shall use the advances obtained under the DIP Facility and the DIP Collateral only for the purposes and in the amounts set forth in the DIP

Financing Term Sheet attached to the Motion as <u>Exhibit 2</u> the Budget attached to the Motion as <u>Exhibit 1</u>, and any subsequent Budgets approved by the DIP Lender, in writing, at the DIP Lender's sole discretion.   The DIP Lender shall have no obligation to make DIP Facility advances in excess of the amounts and times set forth in the DIP Financing Term Sheet.

2.      <u>DIP Facility Obligations</u>.   The DIP Financing Documents shall constitute and evidence the validity and binding effect of the Debtor's obligations under the DIP Facility, which DIP Facility obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee appointed in the Debtor's case, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the foregoing.   The Debtor shall be liable for repayment of any DIP Facility funds advanced pursuant to the DIP Financing Documents, together with interest thereon, at the times and in the amounts set forth in the DIP Financing Documents.

3.      <u>Reserved</u>.

4.      <u>Limitation on Use of DIP Facility Proceeds</u>.   No proceeds of the DIP Facility shall be used to (a) permit the Debtor, or any other party-in-interest or their representatives to challenge, investigate, or otherwise contest or institute any proceeding to determine (or support any other person or entity in contesting or challenging) (i) the validity, perfection, or priority of any security interests in favor of the Pre-Petition Lender, and/or the DIP Lender, or (ii) the enforceability of the obligations of any of the Debtor or any Guarantor (as such term is defined in the Pre-Petition Loan Agreement) under the Pre-Petition Loan Agreement, any other Pre-Petition Loan Documents, the DIP Facility, the DIP Financing Term Sheet, or any other DIP Financing Documents, (b) investigate, commence, prosecute, or defend (or support any other

9

person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding, or cause of action against the Pre-Petition Lender or the DIP Lender and their agents, employees, attorneys, advisors, or representatives including, without limitation, any lender liability claims or subordination claims, (c) investigate, commence, prosecute, or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtor under the Pre-Petition Loan Agreement, any other Pre-Petition Loan Documents, or the DIP Financing Documents, (d) fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Budget and approved by the DIP Lender, or (e) for any other purpose for which the Carve-Out cannot be used.

5.    <u>DIP Facility Advances</u>.  Pursuant to Bankruptcy Code sections 363 and 364(c) and (d), the DIP Facility funds advanced pursuant to the terms of this Order and the DIP Financing Term Sheet (collectively, the "<u>DIP Facility Advances</u>") shall be allowed administrative expenses of the Debtor's estate, which shall, subject to the Carve-Out, have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Chapter 11 Case and any superseding Chapter 7 cases including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 726, 1113, or 1114, (such claim, the "<u>DIP Superpriority Claim</u>").  Notwithstanding the foregoing, the DIP Superpriority Claim shall not be payable from the proceeds of or recoveries upon Avoidance Actions (as such term is defined below).  The time of payment of the DIP Facility Advances shall not be altered, extended, or impaired by any plan

or plans of reorganization that may hereafter be accepted or confirmed or any further orders of this Court which hereafter may be entered.

Unless otherwise required by the U.S. Trustee and/or Bankruptcy Court, all borrowings under the DIP Facility shall be funded directly to the Debtor's DIP bank account. Upon the Bright's Creek Receiver delivering the Debtor an itemized draw request to pay expenses under the Budget, the Debtor shall promptly issue and deliver a DIP account check for the total amount of the draw to the Receiver. On the 10th business day of the month beginning December 15, 2016, the Receiver shall provide the Debtor and DIP Lender a detailed accounting of the revenue received and expenses paid by the Receiver the preceding month and include an explanation of the reasons for any variances from the Budget in excess of ten percent (10%). The first draw of the Receiver shall be a total of $282,330 to fund expenses for the months of November and December, 2016. The accounting by the Receiver shall be retroactive to the petition date.

6.  _Interest and Fees_.  To the extent fully secured, interest on the Pre-Petition Obligations shall accrue from and after the Petition Date at the default rate of interest set forth in the Pre-Petition Loan Agreement and Pre-Petition Loan Documents.  The reasonable fees and expenses of the DIP Lender (whether incurred before or after the Petition Date) shall be payable as set forth in the DIP Financing Term Sheet without further notice, motion, or application to, order of, or hearing before this Court.

7.  _DIP Facility Liens_.  Pursuant to Bankruptcy Code sections 363, 364(c), and 364(d), as security for the DIP Facility Advances and other postpetition costs payable under the DIP Financing Term Sheet, the Debtor is hereby authorized to and are hereby deemed to grant to the DIP Lender a valid, binding, and enforceable lien, mortgage and/or security interest (a "_Lien_," and as so granted to the DIP Lender, the "_DIP Lien_") in all of the Debtor's presently

11

owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (including, without limitation, first priority liens on any cash held in the Debtor's bank accounts), and the proceeds and products thereof (collectively, the "DIP Collateral"), but excluding: (a) any causes of action that could be brought relating to prepetition transfers pursuant to sections 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes, and all proceeds of or recoveries thereon (the "Avoidance Actions"); and (b) any real property collateral that, after the conclusion of the DIP Lender's due diligence regarding such real property, the DIP Lender affirmatively elects to exclude from its collateral package.

8.       Priority of DIP Facility Liens.  Pursuant to Bankruptcy Code sections 364(c) and 364(d), the DIP Lien shall be a first priority senior and priming lien on the DIP Collateral (including the Pre-Petition Collateral), subject and junior only to (i) the Carve-Out (defined below) and (ii) valid, enforceable, properly perfected, and unavoidable prepetition liens (including any liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted under Bankruptcy Code section 546(b)) that are senior to the liens granted to Pre-Petition Lender pursuant to the Pre-Petition Loan Agreement and other Pre-Petition Loan Documents. The DIP Credit Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of any of the Debtor's estate under Bankruptcy Code section 551, and in no event shall any person or entity who pays (or causes to be paid) any of the obligations under the Pre-Petition Loan Agreement or Pre-Petition Loan Documents be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred

upon, the DIP Lender by the terms of the DIP Financing Documents until such time as the obligations under the DIP Financing Documents and this Order are indefeasibly paid in full, in cash.  The DIP Liens shall not be subject or subordinate to liens arising after the Petition Date, other than liens granted pursuant to this Order to the extent set forth in this Order.

9.    Reserved.

10.    Adequate Protection of Pre-Petition Obligations.  Until the indefeasible payment in full of the Pre-Petition Obligations, the Pre-Petition Lender is entitled to adequate protection of its interests in the Pre-Petition Collateral as a result of (a) the provisions of this Order granting first priority and/or priming liens on such Pre-Petition Collateral to the DIP Lender, (b) the Debtor's use of the Pre-Petition Collateral, (c) the imposition of the automatic stay pursuant to Bankruptcy Code section 362, or (d) otherwise, pursuant to Bankruptcy Code sections 361(a), 363(c), and 364(d)(1).  The Pre-Petition Lender, is hereby granted, solely to the extent of diminution in value of the Pre-Petition Liens in the Pre-Petition Collateral from and after the Petition Date, the following:

A.    a Lien in all DIP Collateral (the "Adequate Protection Lien") junior only to the DIP Lien and the Carve-Out; and

B.    a postpetition superpriority administrative expense claim (the "Prepetition Adequate Protection Superpriority Claim") against the Debtor, with recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, under Bankruptcy Code sections 503 and 507 against the Debtor's estate, in each case to the extent the Adequate Protection Lien does not adequately protect against the diminution in value of the Pre-Petition Liens, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor or

any of their respective estates and over all other administrative expenses of any kind, including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, or 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Case pursuant to Bankruptcy Code section 1112; subject and junior only to the Carve-Out, DIP Facility Advances and DIP Superpriority Claim.

11.    <u>No Waiver of Future Adequate Protection Requests</u>.  Nothing herein shall be deemed to be a waiver by the Pre-Petition Lender of its right to request additional or further protection of its interests in any property of the Debtor, to move for relief from the automatic stay (if such relief is required), to seek the appointment of a trustee or examiner or the dismissal of any of the Debtor's bankruptcy cases, or to request any other relief except that so long as no event of default has occurred, DIP Lender will not seek conversion or appointment of a trustee while the Debtor is seeking interim and final approval of this DIP Facility.

12.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor and the DIP Lender to implement the DIP Facility and perform pursuant to the DIP Financing Documents and (b) the creation and perfection of all liens granted or permitted by this Order.  The Debtor and the holders of any DIP Lien or Adequate Protection Lien shall not be required to enter into any additional security agreements or take any further action to create, memorialize, and/or perfect any such Liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be and are deemed valid, binding, enforceable, and automatically perfected by the docket entry of this Order by the Clerk of the Court.  If, however, the holder of any DIP Lien or Adequate Protection Lien in its sole and

absolute discretion shall elect for any reason to enter into, file, record, or serve any such financing statements or other documents with respect to any such Lien, then the Debtor shall execute same upon request and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court.  The holders of any DIP Lien, Pre-Petition Lien, or Adequate Protection Lien are hereby relieved of any requirement to file proofs of claim in the Debtor's bankruptcy cases with respect to any such Liens and the claims secured thereby, but any such holder may in its sole and absolute discretion file any such proof of claim.

13.    <u>Carve-Out</u>.    The DIP Liens, DIP Facility Superpriority Claims, Adequate Protection Liens and Prepetition Adequate Protection Superpriority Claims shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "<u>Carve-Out</u>," and all amounts payable in connection therewith, the "<u>Carve-Out Amounts</u>"):

A.    unpaid postpetition fees and expenses of the Clerk of the Court and statutory fees payable to the U.S. Trustee  pursuant to 28 U.S.C. § 1930;

B.    unpaid postpetition fees and expenses of professionals of the Debtor and professionals of a Statutory Committee (if any), which are retained by an order of the Court pursuant to Bankruptcy Code sections 327, 328, 363, or 1103(a) (the "<u>Professionals</u>") incurred prior to a Termination Event (in an aggregate amount which shall not exceed $75,000 for the Debtor's Professionals and Committee Professionals with respect to fees incurred either before or after a Termination Event), but only to the extent such fees and expenses are (i) incurred prior to a Termination Event, (ii) within the amounts set forth in the Budget approved by the DIP Lender for such Professional through the date of the Termination Event, (iii) subsequently allowed by the Bankruptcy

15

Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iv) not otherwise paid from retainers, or any professional expense escrow account established by the Debtor; and

C.     postpetition fees and expenses of the Professionals incurred after the occurrence of a Termination Event  (in the aggregate amount that shall not exceed $75,000 for the Debtor's Professionals and the Committee's Professionals with respect to fees incurred prior to or after a Termination Event), to the extent that such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from retainers or any professional expense escrow account established by the Debtor

provided, however, that: (x) the Carve-Out shall only be available to pay fees and expenses set forth herein to the extent that unencumbered funds are not otherwise available; (y) (reserved); and (z) in no event shall the aggregate amount of all items included in the Carve-Out for the Debtor's Professionals and the Committee's Professionals exceed $75,000 in the aggregate.  Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Lender with respect to the Carve-Out prior to the entry of the Final Order shall be DIP Facility Advances and such obligations shall be secured by the DIP Lien.  Further, the payment of the fees or costs of any Professional and/or Statutory Committee (if any) shall be subject to Court approval, and the DIP Lender reserve the right to object to any Professional's application for payment.  As used in this Interim Order, the term "Termination Event" shall mean the occurrence of the earlier of: (i) an Event of Default under the DIP Financing Documents; (ii) the Debtor's failure to comply with the terms of this Order or the Final Order; or (iii) the Debtor's failure to comply with any of the Milestones set forth in the DIP Financing Term Sheet.

16

14.    <u>Carve-Out Limitations</u>.    Neither the payment of any Professional fees, nor the Carve-Out shall include payment for any fees and expenses, if any, of the Professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.    the initiation, joinder, support, or prosecution of any action contesting the indebtedness owed to the DIP Lender or the Pre-Petition Lender, or the validity of any liens granted to any of such parties;

B.    preventing, hindering, or otherwise delaying (or supporting any other person or entity in preventing, hindering, or otherwise delaying), whether directly or indirectly, the exercise by the DIP Lender or Pre-Petition Lender of any of its rights and remedies under this Interim Order, the Final Order, the DIP Financing Documents, the Pre-Petition Loan Agreement, or the Pre-Petition Loan Documents;

C.    the commencement, support, or prosecution of any action or proceeding of any claims, causes of action, or defenses against the DIP Lender, the Pre-Petition Lender, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Lender, or any of them, under Chapter 5 of the Bankruptcy Code;

D.    any request to borrow money other than pursuant to the terms of the Interim Order, the Final Order, or the DIP Financing Documents;

E.    with respect to the Debtor, any of the Debtor's Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for Debtor under any chapter of the Bankruptcy Code) performing or commencing any

investigation or litigation (whether threatened or pending) by the Debtor with respect to any matter to be released, waived, or specified as not subject to challenge by the Debtor pursuant to this Order or the Final Order (including, without limitation Paragraphs 24, 25, and 26 herein) or commencing any investigation or litigation (whether threatened or pending) by the Debtor with respect to the Disputed Fee; and

F.    for any other purpose for which proceeds of the DIP Facility may not be used pursuant to the DIP Financing Documents.

15.    <u>Collateral Matters</u>.  Subject to the entry of the Final Order, effective as of the time of commencement of the Debtor's bankruptcy cases on the Petition Date:

A.    Debtor waives irrevocably all claims and rights, if any, it or its estate might otherwise assert against the Pre-Petition Collateral or the DIP Collateral pursuant to Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

B.    no entity in the course of the Debtor's bankruptcy cases shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtor or such Debtor's estate) any cost or expense of preservation or disposition of the Pre-Petition Collateral or the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

C.    no entity shall be permitted to recover from the DIP Collateral or the Pre-Petition Collateral, or assert against the DIP Lender or Pre-Petition Lender, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy cases, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget; and

18

D.      the Pre-Petition Lender and the DIP Lender shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral or the Pre-Petition Collateral.

16.      <u>No Additional Financing or Cash Collateral Usage</u>.  So long as the DIP Facility obligations remain outstanding, unless consented to in writing by the DIP Lender, no Debtor shall seek entry of any further orders in its Chapter 11 Case which authorize (a) under Bankruptcy Code section 363, the use of Cash Collateral; (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code sections 364(c) or 364(d) that does not repay the DIP Facility in full, in cash, (c) the return of goods pursuant to Bankruptcy Code section 546(h) to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to Bankruptcy Code section 553 or otherwise, or (d) any other grant of rights against the Debtor and/or their respective estates that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not repay the DIP Facility in full, in cash.

17.      <u>Default Rights</u>.   Upon the occurrence of: (i) an Event of Default; (ii) the Termination Date; (iii) Debtor's failure to comply with the terms of this Order or the Final Order (including, without limitation, its failure to comply with the Budget); or (iv) Debtor's failure to comply with any of the Milestones set forth in the DIP Financing Term Sheet, and the giving of written notice thereof by the DIP Lender to counsel to the Debtor, the Statutory Committee (if any) and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "<u>Default Notice</u>"), or upon the Maturity Date, then (1) the DIP Lender shall be fully authorized, in its sole discretion to cease

making DIP Facility advances to the Debtor, and (2) the DIP Lender shall be fully authorized to terminate the Debtor's use of the DIP Collateral (including, without limitation, Cash Collateral), and/or (3) the DIP Lender shall be fully authorized to immediately terminate the DIP Facility and demand repayment of the DIP Facility obligations then outstanding.

18.    <u>Exercise of Remedies Against DIP Collateral</u>.  Further, upon the occurrence of an Event of Default and transmission of a Default Notice, or upon the Maturity Date:

A.    the DIP Lender shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code or applicable law or rule (including, without limitation, Bankruptcy Rule 4001(a)), to take immediate reasonable action to protect the DIP Collateral from harm, theft, and/or dissipation;

B.    Additionally, upon the occurrence of an Event of Default or the Termination Date, DIP Lender will also have other customary remedies, including, without limitation, the ability to foreclose upon and/or sell the DIP Collateral and the right to exercise any remedy available under applicable law and obtain emergency or other stay relief by Order of the Bankruptcy Court upon the DIP Lender providing the Debtor and Committee (if any) with email or facsimile notice of the default and up to 3 business days notice of the Bankruptcy Court hearing on DIP Lender's emergency request for stay relief or other relief to exercise such other customary remedies.   The Court will hold an expedited hearing within 3 days of the DIP Lender's motion.   Unless the Debtor or other interested party successfully challenges the occurrence of an Event of Default at the expedited hearing, the Court shall grant relief from stay such that:

(1)    the DIP Lender shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code

or Bankruptcy Rules (including, without limitation, Bankruptcy Rule 4001(a)), to exercise contractual, legal, and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (as such term is defined below) of the DIP Collateral to the repayment of the DIP Facility obligations in accordance with Paragraph 22 of this Order; and

      (2)    the DIP Lender, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with this Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the Debtor.

19.    <u>DIP Facility Reporting</u>.  The Debtor shall provide the DIP Lender with (i) all financial statements, certificates, and reports required pursuant to the DIP Financing Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Lender shall request from the Debtor.  The DIP Lender and its representatives shall have reasonable access to Debtor's business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtor concerning the operation of the Debtor's businesses.

20.    <u>Reserved</u>.

21.    <u>Payment of 363 Sale Consideration</u>.  Upon the closing of the 363 Sale, the Proceeds from the 363 Sale shall be paid directly to the DIP Lender, for immediate application to the DIP Facility obligations and Pre-Petition Obligations.  Such 363 Sale proceeds shall be applied in the manner set forth in Paragraph 22 of this Order.

22.    <u>Application of Proceeds</u>.  For purposes of this Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code) and (ii) any and all payments,

proceeds, or other consideration realized upon the sale, liquidation, realization, collection, or other manner of disposition of the DIP Collateral, whether in the ordinary course of Debtor's business (including without limitation accounts, receivables, and other proceeds arising from the Debtor's sales of goods and/or performance of services) or other than in the ordinary course of Debtor's business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection, or other manner of disposition of DIP Collateral other than in the ordinary course of Debtor's Business, including without limitation any sale authorized pursuant to Bankruptcy Code section 363. Any and all Proceeds of any DIP Collateral shall be delivered to the DIP Lender. All Proceeds received by the DIP Lender shall be applied to repayment of the Pre-Petition Obligations and the DIP Facility obligations in the following manner:

      A.     Any Proceeds received by the DIP Lender as a result of either (x) payment of the Proceeds from the 363 Sale to the DIP Lender; or (y) an exercise of remedies by the DIP Lender following an Event of Default or Termination Event; shall be applied: (i) first, to reduce outstanding obligations under the DIP Facility; and then (ii) second, to reduce outstanding Pre-Petition Obligations in the manner set forth in the Pre-Petition Loan Agreement.

      B.     Any other Proceeds received by the DIP Lender shall be applied: (i) first, to reduce outstanding Pre-Petition Obligation and; (ii) second, to the extent that application of such Proceeds fully repays all outstanding Pre-Petition Obligations, in full, in cash, then to reduce outstanding obligations under the DIP Facility.

provided, however, that the foregoing shall be subject in all respects to the priorities of Liens with respect to the Liens granted by or permitted under this Order. The foregoing is without prejudice to the rights of (a) the DIP Lender, the Statutory Committee, or any other party to

object to any proposed Disposition or (b) the rights of third parties with respect to a Challenge Action (defined below) and the remedies that may result from a successful Challenge Action. Such applications of Proceeds shall be free and clear of any claim, charge, assessment, or other liability.

23.     <u>Credit Bidding</u>.  Subject to entry of the Final Order, the DIP Lender and Pre-Petition Lender are hereby authorized to credit-bid all or any of the applicable obligations under the DIP Facility and the Pre-Petition Loan Agreement and Pre-Petition Loan Documents at any disposition of any Pre-Petition Collateral and/or DIP Collateral.

24.     <u>Binding Nature of Stipulations and Other Matters</u>.  Subject to the right to bring a Challenge Action as set forth in Paragraph 27 below, upon entry of this Order:

A.     the Stipulations shall be binding upon the Debtor and all other persons, entities, and/or parties in all circumstances;

B.     the validity, extent, priority, perfection, enforceability, and non-avoidability of the Pre-Petition Lender's respective first priority, validly perfected prepetition claims and liens against the Debtor and the Pre-Petition Collateral shall not be subject to challenge by the Debtor or any other person, entity, or party; and

C.     neither the Debtor, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of the Pre-Petition Lender prior to the Petition Date.

25.     <u>Debtor Release</u>.  Except for the Debtor's right to challenge the Disputed Fee, in consideration of and as a condition to the DIP Lender making the DIP Facility Advances and providing credit and other financial accommodations to the Debtor pursuant to the terms of this

Order and the DIP Financing Term Sheet, each of the Debtor (each a "<u>Releasor</u>" and collectively, the "<u>Releasors</u>") and their bankruptcy estates, subject to Paragraph 27 herein, absolutely releases, forever discharges and acquits each of the Pre-Petition Lender, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "<u>Releasees</u>") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "<u>Prepetition Released Claims</u>") of every kind, name, nature, and description, whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against each and every of the Releasees arising at any time prior to the entry of this Order (including, without limitation, claims relating to the Debtor, the Pre-Petition Loan Agreement, the Pre-Petition Loan Documents, and other documents executed in connection therewith, and the obligations thereunder); <u>provided, however</u>, that such release shall not be effective as to the Debtor's bankruptcy estates until the expiration of the Challenge Period.  In addition, upon the indefeasible payment, in full, in cash, of all DIP Facility obligations owed to the DIP Lender arising under this Order and the DIP Financing Term Sheet, DIP Lender shall be released from any and all obligations, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the DIP Financing Term Sheet or other DIP Financing Documents.

26.    <u>Releasor Covenants</u>.  Except for the Debtor's right to challenge the Disputed Fee, each Releasor hereby absolutely, unconditionally, and irrevocably covenants and agrees with each Releasee that it will not sue (at law, in equity, or in any other proceeding) any Releasee on the basis of any claims or causes of action released and discharged by such Releasor pursuant to

this Order.  If any Releasor violates this covenant, Debtor agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all reasonable attorneys' fees and costs incurred by any Releasee as a result of such violation.

27.     <u>Challenge Action and Challenge Period</u>.  Notwithstanding any other provisions of this Order, any interested party (other than the Debtor or their Professionals) in these cases (including, without limitation, the Statutory Committee (if any)) shall have sixty (60) days after the date of the Order (the "<u>Challenge Period</u>"), to commence an adversary proceeding against the Pre-Petition Lender for the purpose (collectively, a "<u>Challenge Action</u>") of:

A.      contesting challenging the findings of fact, Stipulations, waivers or releases contained herein;

B.      challenging the validity, extent, priority, perfection, enforceability, and non-avoidability of the Pre-Petition Obligations and/or Pre-Petition Liens (as applicable) against the Debtor;

C.      seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of the Pre-Petition Lender (as applicable) prior to the Petition Date;

D.      seeking damages or equitable relief against the Pre-Petition Lender arising from or related to their prepetition business and lending relationships with the Debtor, including without limitation equitable subordination, recharacterization, lender liability, and deepening insolvency claims and causes of action; or

E.      challenging any other matter to be waived or released pursuant to this Order (including, without limitation, pursuant to Paragraphs 24, 25 and 26).

28.     <u>No Challenge Actions After Expiration of Challenge Period</u>.   All parties in interest, including without limitation the Statutory Committee (if any), that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge Action or challenging in any manner the Liens or claims of the Pre-Petition Lender and shall be bound by the waivers, Stipulations, and terms set forth in this Order (including Paragraphs 24, 25 and 26 of this Order).   Any Challenge Action filed shall prohibit application of this paragraph only to the extent of the specific matters set forth in such Challenge Action on the date of filing.

29.     <u>Retention of Challenge Action Defenses</u>.   The legal and equitable claims, counterclaims, defenses, and/or rights of offset and setoff of the Pre-Petition Lender in response to any such Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in no event revive, renew, or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action.   Despite the commencement of a Challenge Action, the prepetition claims and Liens of the Pre-Petition Lender shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code section 502(d) and not subject to subordination under Bankruptcy Code section 510 until such time as a final and non-appealable judgment and order is entered sustaining such Challenge Action in favor of the plaintiffs therein. Notwithstanding anything to the contrary contained in this Order, the Court expressly reserves the right to order other appropriate relief against Pre-Petition Lender in the event there is a timely and successful Challenge Action by any party in interest to the validity, enforceability, extent, perfection or priority of the Pre-Petition Liens.

30.    <u>No Control by DIP Lender</u>.  In making decisions to advance any extensions of credit to the Debtor pursuant to the DIP Facility or in taking any other actions reasonably related to this Order or the DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any Budget), the DIP Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "control person," "responsible person," or other "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Lender and the Debtor.

31.    <u>Successors and Assigns</u>.  This Order shall be binding upon and inure to the benefit of the DIP Lender, the Pre-Petition Lender, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for Debtor under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

32.    <u>Continuing Nature of DIP Facility Liens and Claims</u>.  Any order dismissing any of the Chapter 11 Case under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) DIP Lender's liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding

such dismissal until the DIP Facility obligations are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Facility Superpriority Claim, the DIP Liens, the Adequate Protection Liens, and the Prepetition Adequate Protection Superpriority Claims.

33.    <u>DIP Financing Term Sheet Controls</u>.  To the extent that any of the provisions of this Order shall conflict with any provisions of the DIP Financing Term Sheet, or with any order of this Court authorizing the Debtor to continue the use of prepetition bank accounts, cash management systems, treasury management systems, or business forms, or any similar orders, the DIP Financing Term Sheet is deemed to control and supersede conflicting provisions.

34.    <u>Immediate Effect of Order</u>.  The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.    <u>Continuing Nature of Adequate Protection and Other Benefits Under DIP Order</u>. DIP Lender and the Pre-Petition Lender shall be entitled to the benefits and protections of this Order, including (a) the adequate protection afforded to the Pre-Petition Lender set forth in this Order, and (b) the protections afforded pursuant to Bankruptcy Code section 364(e), with respect to all loans, advances, and other financial, accommodations made by them pursuant to this Order. The DIP Lien, the priority afforded the DIP Facility Advances, and the adequate protection

afforded to the Pre-Petition Lender, as set forth in this Order, shall be binding on the Debtor and any successor trustee or trustees even if this Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Order. Except as provided herein, no Proceeds, or Cash Collateral may be used by any party in interest seeking to modify any of the rights granted to DIP Lender hereunder or in the DIP Financing Documents.

36.     DIP Facility Modifications.  The Debtor and the DIP Lender may implement non-material modifications of the DIP Financing Term Sheet without the need for notice or further approval of this Court, provided, however, that copies of such amendments will be provided to the U.S. Trustee and the Statutory Committee (if any).  The Debtor and the DIP Lender may implement material modifications of the DIP Financing Term Sheet on at least seven (7) calendar days prior notice to the Statutory Committee (if any) and the U.S. Trustee.

37.     Further Assurances.  The Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, deeds of trust, and financing statements), and to pay all fees and expenses that may be required or necessary for the Debtor's performance under this Order or the DIP Financing Documents, including, without limitation, (a) the execution of the DIP Financing Term Sheet, (b) the payment of the fees and other expenses described herein or in the DIP Financing Term Sheet as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees, and facility fees.

38.     Retention of Jurisdiction.  This Court shall retain jurisdiction to enforce the provisions of this Order, the DIP Facility and the DIP Financing Term Sheet, and this Court shall

retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order, the DIP Facility and the DIP Financing Term Sheet.

39.    364(e) Protections.    This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on terms and conditions to which the Debtor and DIP Lender have agreed.    Thus, each of the terms and conditions constitutes a part of the authorization under Bankruptcy Code section 364, and is, therefore, subject to the protections contained in Bankruptcy Code section 364(e), regardless of (i) any stay, modification, amendment, vacation, or reversal of this Order or the DIP Financing Term Sheet or any term hereunder or thereunder; (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2); or (iii) the dismissal or conversion of any of the Chapter 11 Case.

40.    Final Hearing.    A final hearing with respect to the Motion is scheduled for _____ ___, 2016 at _____ __.m. (prevailing Eastern time) (the "Final Hearing") before the Honorable A. Jay Cristol, United States Bankruptcy Judge.    The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Bankruptcy Rule 2002 file written objections, and serve them on (i) the Debtor's proposed counsel, Levine Kellogg Lehman Schneider Grossman LLP, attn: Thomas Lehman and Robin Rubens, 201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, FL  33131,  email: trl@lklsg.com and rjr@lklsg.com; (ii) the DIP Lender's counsel, Holland & Knight LLP, attn.: Noel Boeke, 100 North Tampa Street, Suite 4100, Tampa, FL 33602, email: noel.boeke@hklaw.com; and (iii) the U.S. Trustee, attn.: Steven Schneiderman  and Johanna P. Armengol,  51 SW First Avenue, Room 1204, Miami, FL 33130; Facsimile: (305) 536-7360;

Email: USTP.Region21@usdoj.gov  on or before _____ a.m./p.m. (prevailing Eastern time)

on _____ ___, 2016.

* * * *

Submitted by:

Thomas R. Lehmen, Esq. (Florida Bar No. 351358) trl@lklsg.com
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP. Miami Center, 22nd Floor,
201 S. Biscayne Boulevard, Miami, FL  33131
*Proposed Attorneys for Debtor*

**(Attorney Lehman is directed to serve a conformed copies of this order upon the Service List attached to the original motion immediately upon receipt hereof, and to file a certificate of service with the Court confirming such service.)**

*The party submitting the order shall serve a copy of the signed order on all required parties and file with the court a certificate of service conforming with Local Rule 2002-1(F).*

31